**STERLING BANK, Appellant,**

v.

**WILLARD M, L.L.C., William F. Young, Willard E. Shuman, and H. Richard Dickinson, as Substitute Receiver for Willard M, L.L.C., Appellees.**

No. 01–05–00195–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 13, 2006.

---

Christopher Malek Shamaly, Yasmin Islam Atasi, Paul V. Simon, Winstead Sechrest & Minick, P.C., Houston, TX, Craig T. Enoch, Winstead Sechrest & Minick, P.C., Austin, TX, for Appellant.

Charles W. Getman, Gregory M. Cokinos, Cokinos Bosien & Young, Timothy A. Hootman, Houston, TX, for Appellees.

Panel consists of Justices KEYES, ALCALA, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

In this summary judgment proceeding, appellant, Sterling Bank (Sterling), challenges the trial court's order that taxed more than half a million dollars as costs of court against Sterling. In two issues on appeal, Sterling contends that the trial court erred in entering judgment against Sterling for costs of court because (1) the trial court did not find good cause or state its reasons for why it allocated costs against Sterling and (2) the items taxed are not costs of court.

We reverse and render.

### Background

Willard M provides security guard services across the country. In 2002, the principals of Willard M, Willard E. Shu-

man and William F. Young, contacted Sterling about the prospect of financing the acquisition of a commercial security guard division of International Total Services.

To finance the acquisition, Sterling and Willard M executed two promissory notes on April 29, 2002: a 90–day note in the amount of $3,000,000 and a 90–day revolving credit note for $3,900,000. Willard M executed a third promissory note payable to Sterling on July 3, 2003 for $250,000. The notes were secured by a security agreement dated April 29, 2002, in which Willard M granted Sterling a first priority security interest in all of Willard M's assets. The notes matured on December 2, 2003 after a number of extensions. When Willard M defaulted, Sterling sued Young[1] and Shuman. Sterling also filed an emergency application for the appointment of a receiver. On December 16, 2003, the trial court signed an agreed order appointing a receiver, which provided that the receiver

[S]hall be authorized, subject to control of this Court, to do any and all acts necessary to the proper and lawful conduct of the receivership, including the following: [s]ell all of the assets and operations of Willard M, whether done partially over time or in one sale, and apply the sales proceeds, after deducting all necessary and proper expenses, to the payment of the Sterling Indebtedness.

During the receivership, the receiver[2] sold Willard M's assets with court approval. The trial court also approved Sterling's motion to foreclose on Willard M's accounts receivable. On March 18, 2004, the trial court granted an agreed order to substitute the receiver.[3] Paragraph five of the agreed order states,

The termination of employment of all remaining Willard M corporate employees and agents as of March 19, 2004 is hereby approved. The Bank shall advance sufficient funds to Willard M under its Revolving Credit Note to satisfy all outstanding salaries and wages due to such remaining employees for services through March 19, 2004. On behalf of Willard M, Mr. Dickinson may retain one or more such employees and/or agents after said date as independent contractors to assist with the winding down of Willard M's operations. Sterling Bank shall advance sufficient funds to Willard M under its Revolving Credit Note to pay those independent contractors and at the rates specified on the schedule attached hereto.

In regard to the independent contractors, four employees were named, including Dickinson.

During a June 15, 2004 hearing to approve the sale of Willard M's assets, the trial court inquired into a number of documents that had been filed by Willard M employees who alleged that they had not been paid for the two weeks prior to termination of employment (February 15 through March 3). The trial court remarked that "what I'm learning is evidently everybody in the entire company is in the same situation." The substitute receiver stated that payroll was paid through February 15, but that Willard M had no money to pay employees for their last two weeks. The trial court further stated that

1. Young subsequently filed for bankruptcy and was nonsuited.

2. The trial court first appointed Jonathon K. Heffron as the receiver.

3. On March 23, 2004, the trial court appointed substitute receiver H. Richard Dickinson pursuant to an agreed motion filed by Mr. Heffron. Mr. Heffron asked the trial court to substitute the receiver with someone who charged lower fees.

she was "very shocked that in a case where there is a Court ordered receiver, the receiver would not pay the salaries, and if he was unable to pay the salaries, would not report that fact to the Court." The trial court further stated, "[T]he receiver might want to start looking at what they are going to do about this, because the receiver is who incurred this debt. He was in control of the assets of this company. . . ." In closing, the trial court stated, "I thought the receiver always paid all of his expenses and the expenses necessary to support the ongoing business so that it was a viable business that could be sold, and to have that not funded and yet take the assets of a sale of a going business and the accounts receivable for the hard work of these employees and not pay the employees, the equity court of this Court is struck."

The trial court held another hearing on October 8, 2004. The trial court told counsel for Sterling and the substitute receiver that it wanted an accounting of all expenses in the receivership and all the costs to run the receivership, and it stated that the unpaid costs would be taxed against Sterling.

The last hearing occurred on January 24, 2005. There, the trial court granted Sterling's motion for summary judgment, awarded $3,349,017.32 to Sterling, the deficiency amount on three promissory notes, awarded $569,123.97 in attorney's fees to Sterling, but sua sponte ordered Sterling

to pay the remaining receivership expenses that were reflected in the substitute receiver's final accounting dated December 6, $505,298.45, as costs of court.[4] These "costs of court" include (1) $358,226.43 in Willard M's unpaid payroll; (2) $18,885.92 in federal payroll taxes; (3) $52,068.89 in Willard M's state tax liability; (4) $30,237.43 in Willard M's unpaid vendors; and (5) $45,879.78 for a disputed payment owed to WSA Group, Inc.[5] The trial court also ordered Sterling to pay the substitute receiver $13,152.00 for expenses to issue W–2's for all former Willard M employees for calendar year 2004.

Sterling appeals from the trial court's order that directs Sterling to pay $505,298.45 to the substitute receiver.

## Analysis

■ In its first issue on appeal, Sterling argues that the trial court did not state good cause on the record before assessing $505,298.45 as costs of court against Sterling. In its second issue on appeal, Sterling argues that the amounts taxed against Sterling are not costs of court. We agree with Sterling's second issue, and thus do not reach the first.

■ "Texas statutes and case law delineate which items the court may and may not include in costs." *Allen v. Crabtree*, 936 S.W.2d 6, 7–8 (Tex.App.-Texarkana 1996, no writ). Rule 131 provides that

4. The final accounting from the substitute receiver stated that the following liabilities were incurred after December 16, 2003:(1) $358,226.43 for unpaid payroll liability; (2) $18,885.92 in federal payroll tax liability; (3) $52,068.89 for state tax liability; (4) $30,237.43 in amounts due vendors; (5) $45,879.78 due to WSA Group Inc. pursuant to a sales agreement; (6) $ 3,000 due to the substitute receiver; and (7) $21,146.07 due to the law firm representing the substitute receiver.

5. At the summary judgment hearing, Sterling opposed paying $45,879.78 to WSA Group, Inc. because Sterling disputed the amount. The trial court agreed that it was not a liquidated sum, but nonetheless ordered that Sterling pay the amount as costs of court and further ordered that the substitute receiver hold that sum in an escrow account until a determination that the sum should be paid.

"[T]he successful party to a suit shall recover of his adversary all costs incurred therein, except when otherwise provided." Tex.R. Civ. P. 131. " 'Costs' usually refers to fees and charges required by law to be paid to the courts or some of their officers, the amount of which is fixed by statute or the court's rules e.g. filing and service fees." *Ex parte Williams*, 866 S.W.2d 751, 753 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding). "Costs, within the meaning of Rules 125 through 149 ... are those items in the clerk's bill of costs." *Pitts v. Dallas County Bail Bond Bd.*, 23 S.W.3d 407, 417 (Tex.App.-Amarillo 2000, pet. denied); *see also* Tex.R. Civ. P. 125–149.

The allocation of costs is a matter for the trial court's discretion and cannot be overturned on appeal except for an abuse of discretion. *Univ. of Houston–Clear Lake v. Marsh*, 981 S.W.2d 912, 914 (Tex.App.-Houston [1st Dist.] 1998, no pet.). However, the issue in this case is not the allocation of costs, but the assessment of costs. *See Whitley v. King*, 581 S.W.2d 541, 544–45 (Tex.Civ.App.-Fort Worth 1979, no writ) (noting that power to tax costs does not include power to tax items normally not allowed). Generally, in Texas, expenses incurred in prosecuting or defending a lawsuit are not recoverable as costs, unless permitted by a statute or equitable principle. *Phillips v. Wertz*, 579 S.W.2d 279, 280 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.). Under the Civil Practice and Remedies Code, a party may recover fees of the clerk and service fees due to the court, court reporter fees for the original of stenographic transcripts, and such other costs and fees permitted to be awarded by other rules and statutes. Tex. Civ. Prac. & Rem.Code Ann. § 31.007(b) (Vernon 1997).

Here, the trial court ordered Sterling to pay unpaid, unliquidated employee payroll, federal and state tax liabilities, vendor claims, and other expenses as costs of court. We have found no authority that these unpaid debts of Willard M are costs that can be taxed against a party as court costs. Rather, these expenses are properly designated as business liabilities of Willard M. The only parties to the trial court proceeding are Sterling, Willard M, and the substitute receiver. None of the parties who have unpaid claims intervened in this suit. As of yet, no entity has been adjudged liable for these claims. The liabilities assessed as costs were not generated by the courts or some of their officers, but rather by Willard M or others—should the claimants seek a recovery against them. *See Ex parte Williams*, 866 S.W.2d at 753; *Westech Eng'g Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 206 (Tex.App.-Austin 1992, no writ) (" 'Costs' generally do not include costs billed to the client as part of the attorney's fee for services provided."). Accordingly, we conclude that the trial court abused its discretion in taxing Sterling with items that cannot properly be designated as costs of court. *See Whitley*, 581 S.W.2d at 544–45 (holding that "the power to tax costs, otherwise than by Rule 131 for good cause shown, does not include the power to tax, as costs, items which are not normally allowed").

Because we resolve Sterling's second issue in its favor, it is unnecessary for us to address its first issue.

## Conclusion

We reverse the portion of the judgment of the trial court that ordered Sterling Bank to pay $505,298.45 as costs of court and render judgment that the substitute receiver of Willard M, LLC, Richard Dickinson, takes nothing from Sterling Bank as

costs of court.[6]

---

6. Sterling also asked in the prayer of its appellate brief that we "order the disbursement to Sterling of the foreclosure sales proceeds ($74,811.01) which the trial court ordered be held by the receiver." Sterling provided no argument or authority for its request and thus the complaint is waived. *See* TEX.R.APP. P. 38.1(h).